UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD T. TYSON, SR., | |
| *Plaintiff*, | |
| v. | Civil Action No. 20-cv-147 (FYP) |
| DEPARTMENT OF LABOR, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

Plaintiff Howard T. Tyson, Sr., filed this action, *pro se* and *in forma pauperis*, against the United States Department of Labor; the Department of Labor's Chief Evaluation Officer, Christina Yancey; the Department of the Treasury; and the Department of the Treasury's Commissioner of the Bureau of Fiscal Service ("Fiscal Service"), Timothy Gribben.  *See* ECF No. 1 (Complaint), at 2, 4.  Tyson alleges that Defendants have all participated in wrongfully deducting — or "offsetting" — funds from his Social Security and federal annuity payments, in violation of the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. § 1001 *et seq*., and other statutes.  *Id*. at 4–5.  Tyson seeks an order directing Defendants to stop offsetting his benefits payments and to return the funds collected from previous offsets.  *Id*. at 5.

Defendants have filed a Motion to Dismiss and for Summary Judgment, *see* ECF No. 17 (Defendants' Motion), and a Memorandum in Support, *see* ECF No. 17-1 (Defendants' Memorandum).  In response, Tyson has filed an Opposition.  *See* ECF No. 21 (Plaintiff's Opposition).

For the reasons explained below, the Court will grant Defendants' Motion to Dismiss as to (1) any challenges to the Labor Department's decision that Tyson received an overpayment of

benefits, and (2) all claims against the Treasury Department and Gribben based on their administration of the offsets.  It will further grant Defendants' Motion for Summary Judgment as to (1) any claims that the offset amounts exceeded statutory limits, and (2) any claims that the Labor Department or Yancey failed to adhere to constitutional or statutory due-process requirements.

## BACKGROUND

Howard Tyson previously worked as a mail handler for the United States Postal Service ("USPS").  *See* ECF No. 17-4 (Declaration of Jennifer Valdivieso), ¶ 2.  On October 20, 2012, he filed a claim under the Federal Employees' Compensation Act ("FECA") with the Labor Department's Office of Workers' Compensation Programs ("OWCP"), seeking compensation for work-related lower-back injuries. *Id.* (citing ECF 17-5 (Valdivieso Exhibits), Ex. A, at ECF p. 2).[1]  OWCP accepted Tyson's claim for (1) sprain of back, lumbar region; (2) aggravation of lumbar stenosis; and (3) displacement of lumbar intervertebral disc without myelopathy.  *See id.* (citing Valdivieso Ex. A, at ECF pp. 4–7).  From December 2012 to June 2015, Tyson received medical and wage loss benefits under FECA for his injuries.  *Id.*, ¶ 3; Valdivieso Ex. B, at ECF pp. 9–14.

Tyson also filed a FECA claim on February 11, 2014, for a "schedule award," which provides compensation for "permanent disabilit[ies]" involving partial or total loss of the use of certain body parts.  *See* 5 U.S.C. § 8107; 20 C.F.R. § 10.404; Valdivieso Decl., ¶ 4 & n.1 (citing Valdivieso Ex. C, at ECF pp. 18–19).  OWCP granted a schedule award to Tyson for a 4% impairment of his lower left extremity from November 19, 2014, to February 7, 2015, which amounted to $8,550.72.  *See* Valdivieso Decl., ¶ 4 (citing Valdivieso Ex. C, at ECF pp. 20–22).

---

[1]      OWCP is the division within the Department of Labor tasked with administering FECA.  *See* 20 C.F.R. § 10.1.

Tyson appealed this determination to the OWCP Branch of Hearings and Review, which resulted in the case being remanded for further factual development on November 16, 2015. *Id.*, ¶ 5; Valdivieso Ex. D, at ECF pp. 26–31.  New evidence presented on remand led OWCP on May 5, 2016, to issue a revised determination that granted Tyson a modified schedule award for an additional 2% impairment of his lower left extremity. *See* Valdivieso Decl., ¶ 5; Valdivieso Ex. D, at ECF pp. 32–34.  The modified award entitled him to $3,951.07 for the period from March 25, 2016, to April 30, 2016, and $2,990 for every month thereafter until June 13, 2016. *See* Valdivieso Decl., ¶ 5 (citing Valdivieso Ex. D, at ECF p. 32).  OWCP noted in its decision that it had previously paid Tyson a schedule award for 4% impairment. *See* Valdivieso Ex. D, at ECF p. 32.

Tyson once again appealed. *See* Valdivieso Decl., ¶ 6.  On November 10, 2016, the OWCP Branch of Hearings and Review affirmed OWCP's May 5, 2016, determination and remanded the case to OWCP to clarify the benefits amounts paid to Tyson, as the hearing examiner suspected that OWCP "might have overpaid." *Id.* (citing Valdivieso Ex. E, at ECF pp. 38–43).  Reviewing records from June 13, 2015, to May 3, 2016, the hearing examiner noted that OWCP might have initially overpaid Tyson, as his payments were calculated based on the previous 4% impairment rating and "a second award for *possibly* 4% impairment . . . rather than an additional 2% impairment *that should have been paid*."  Valdivieso Ex. E, at ECF pp. 42–43 (emphasis in original); Valdivieso Decl., ¶ 6.

On March 16, 2017, OWCP issued a preliminary determination that it had, in fact, overpaid Tyson by $4,233.16. *See* Valdivieso Decl., ¶ 7 (citing Valdivieso Ex. F at ECF pp. 45–47).  OWCP found that it had erroneously paid Tyson for an additional 4% impairment, when he was entitled only to additional payments for a 2% impairment. *Id.*  The decision noted that

Tyson was "without fault," and that he had thirty days to contest the determination or to request a waiver of recovery of the overpayment through: (1) a telephone conference with the district office; (2) the submission of written evidence; or (3) a pre-recoupment hearing.  *See* Valdivieso Ex. F, at ECF pp. 45–47.  The decision also informed Tyson of his right to inspect and copy OWCP's records, and stated that if he were unable to pay back the money in full, OWCP would "determine a fair repayment method."  *Id.* at ECF p. 45.  Tyson did not respond to the preliminary determination letter.  *See* Valdivieso Decl., ¶ 7; Valdivieso Ex. F., at ECF p. 55 ("No response has been received to the preliminary decision.").

With no response from Tyson, OWCP finalized its March 16, 2017, determination and issued a final decision on July 10, 2017.  *See* Valdivieso Decl., *¶* 8; Valdivieso Ex. F, at ECF pp. 51–52.  In its final decision, OWCP stated that although Tyson was without fault, the circumstances of his case did not warrant waiver of recovery of the overpayment.  *See* Valdivieso Ex. F., at ECF p. 51.  The final decision letter instructed Tyson to forward payment of the full amount of $4,233.16 within thirty days, or to contact OWCP to arrange an installment plan.  *Id.* at ECF p. 53.  It also informed Tyson that his debt might be referred to the Treasury Department for administrative offset against any federal payments that he was due, including his retirement annuity, *id.*;[2] the letter further notified him of his right to appeal.  *Id.* at ECF p. 54.

---

[2]        The final decision letter stated:

> Please forward payment for the full amount of $4233.16.  Payment is due within 30 days from the date of this letter.  If you are unable to refund the entire overpayment immediately, please contact this office within 30 days so that appropriate arrangements for recovery (such as installment payments) can be made . . . . If necessary, this Office can request a debtor's Federal employing agency to recover the overpayment from the debtor's salary.  OWCP can also ask the Office of Personnel Management to recover the overpayment from money payable to the debtor from the Civil Service Retirement Fund.  If you do not send us a check or contact us about this debt within 30 days, we will take one of these courses of action if you work for the Federal government, or if you are eligible for or receiving a Civil Service annuity.

Tyson appealed the decision to the Employment Compensation Appeals Board ("ECAB").  *See* Valdivieso Decl., ¶ 9; Valdivieso Ex. G, at ECF p. 58.  While his appeal was pending, he did not pay the debt, *see* Valdivieso Decl., ¶ 11, leading OWCP to send him demand letters on September 19, 2017, and October 25, 2017, *id.*, ¶ 12 (citing Valdivieso Ex. I, at ECF pp. 80–83).  The letters explained that OWCP could collect the debt even if he did not pay it, as OWCP could refer the debt to the Department of the Treasury to be administratively offset against Tyson's federal salary or benefits.  *Id.*, ¶ 13 (citing Valdivieso Ex. I, at ECF pp. 80, 82).  The demand letters also informed Tyson that if he did not pay, interest and administrative charges would be added to the debt.  *See* Valdivieso Ex. I, at ECF pp. 80, 82.  Tyson did not respond to the demand letters.  *See* Valdivieso Decl., ¶ 13.

On December 15, 2017, OWCP referred Tyson's debt to the Treasury Department for collection.  *Id.*, ¶ 14.[3]  The referral listed the account number for his debt, 7288510, and mistakenly referred to him as "Howard Johnson."  *Id.*, ¶ 15 (citing Valdivieso Ex. I, at ECF p. 85); ECF No. 17-6 (Declaration of Jennifer Plant), ¶¶ 7, 7(a) (citing ECF No. 17-7 (Plant Exhibits), at ECF p. 2).

---

OWCP may also refer delinquent debts to the Department of Treasury for collection by administrative offset from any federal payments that may be due you.  We will assess an additional administrative cost to help defray the expense of this referral. Information about the status and delinquency of your debt will also be subject to credit reporting.

Valdivieso Ex. F, at ECF p. 53.

[3]  The Treasury Offset Program is a centralized debt collection program, operated by the Fiscal Service, that assists federal agencies in collecting delinquent debts.  *See* 31 C.F.R. §§ 285.5(a)(1), (d).  The Fiscal Service attempts to "match" any potential federal payments owed to a debtor/payee by "payment agencies," with legally enforceable delinquent debts held by "creditor agencies."  *See id.* §§ 285.5(b), (c)(2).  Unless expressly exempted by statute, all federal payments are eligible for administrative offset, including benefit payments from the Social Security Administration and retirement and other annuity payments from the Office of Personnel Management.  *See id.*§§ 285.5(a)(1), (c), (e)(1); *id.* § 285.2; *see also Lockhart v. United States*, 546 U.S. 142, 145–46 (2005).  Once the Fiscal Service identifies a match, it proceeds to offset some or all of the federal payments; it then pays the offset amount to the creditor agency, less the administrative fees assessed, and submits any remainder to the debtor/payee. *See* 31 C.F.R. §§ 285.5(f)–(i).

On March 6, 2018, ECAB affirmed the overpayment and declined to waive recovery of the debt. *See* Valdivieso Decl., ¶ 9 (citing Valdivieso Ex. G, ECF pp. 58–63). Tyson sought reconsideration of the decision, which ECAB denied on September 13, 2018. *Id.*, ¶ 10 (citing Valdivieso Ex. G, at ECF pp. 64–66). Seeking other recourse, Tyson filed another claim for an increased schedule award, which OWCP denied on November 14, 2018. *Id.*, ¶ 12. Undeterred, Tyson filed five appeals, all of which were denied by OWCP. *Id.* One of those denials was appealed to ECAB, where it remained pending when the instant case was filed. *Id.* (Valdivieso Ex. H, at ECF pp. 68–78)

Meanwhile, the Treasury Department began deducting funds from Tyson's Social Security disability benefit payments and from his annuity payments from the Office of Personnel Management ("OPM"). [4] *See* Plant Decl., ¶ 10. Offsets against Tyson's benefits payments commenced on December 2, 2019, when an annuity payment from OPM of $1,038.38 was offset by $259.60. *Id.*, ¶ 10. Before initiating the offset of Tyson's OPM annuity payments, the Fiscal Service sent separate 30-day and 60-day demand/warning letters on October 1, 2019, and November 1, 2019. *Id.*, ¶ 7(d) (citing Plant Ex. D, at ECF pp. 12–13). Similarly, before any payments were offset from Tyson's Social Security benefits, the Fiscal Service sent 30-day and 60-day demand/warning letters on December 24, 2019, and January 22, 2020. *Id.*, ¶ 7(c) (citing Plant Ex. C, at ECF pp. 9–10).

In July 2020, Tyson informed the Treasury Department that OWCP had misidentified him as "Howard Johnson" on its paperwork. *See* Valdivieso Decl., ¶ 15; Plant Decl., ¶ 7(b). OWCP recalled the debt, corrected his name to "Howard Tyson," and then resubmitted the debt to the Treasury Department on August 18, 2020. *See* Valdivieso Decl., ¶ 15 (citing Valdivieso

---

[4]     Defendants attest that no funds have been offset from Tyson's FECA benefits because he has not received any FECA benefits since 2015. *See* Valdivieso Decl., ¶ 18.

Ex. J, at ECF pp. 85–86); Plant Decl., ¶¶ 8–9.  The misnomer of Tyson's account had no substantive effect because the debt amount, and all other associated details, had been properly attributed to Tyson and had been cross-checked with his Social Security number and home address.  *See* Plant Decl., ¶ 9.  Before resuming the offsets against Tyson's benefits, the Fiscal Service sent him additional demand letters, again warning him that his Social Security and annuity benefits would be offset.  *Id.*, ¶¶ 8(b)–(c) (citing Plant Exs. F, G, H, at ECF pp. 18, 21–22, 24–25).

Tyson proceeded to lodge another dispute with the Treasury Department on September 24, 2020, taking issue with the amount of his debt.  *See* Valdivieso Decl., ¶ 16 (citing Valdivieso Ex. J, at ECF p. 86).  On December 2, 2020, OWCP confirmed that the debt amount of $4,233.16 was accurate and stated that the amount outstanding at that point was $1,376.04.  *Id.*

Between December 2, 2019, and February 1, 2021, seventeen offsets were made against Tyson's benefits payments.  *See* Plant Decl., ¶ 10 (citing Plant Exs. B, F, at ECF pp. 5–6, 17–18).  In total, $4,457.35 was deducted from benefit payments of $20,588.16.  *Id.*  Each offset amount included an administrative "offset fee," which added to Tyson's debt.  *See* Plant Exs. B, F, at ECF pp. 5–6, 17–18.

On January 21, 2020, Tyson filed the instant suit.  *See* Compl.  Tyson's Complaint alleges that the government is improperly offsetting his benefits payments in contravention of ERISA and other statutes; it also takes issue with his misidentification as "Howard Johnson," and the assignment of his new debt account number.  *See id.* at 4–5.  Beyond the allegations in his Complaint, Tyson raises other contentions in his subsequent filings.  *See* ECF No. 14 (Plaintiff's Notice); ECF No. 16 (Plaintiff's Civil Statement); ECF No. 21 (Plaintiff's Opposition).  He alleges that Defendants failed to provide him proper notice of his debt and did

not give him an adequate hearing.  *See* Pl. Not. at 2–4; Pl. Opp. at 2–4.  In addition, he argues

that despite his outreach, the Treasury Department failed to properly respond.  *See* Pl. Not. at 3–

4; *see also* Pl. Stmt. at 2–6.  Tyson also challenges the collection fees that the Treasury

Department levied.  *See* Pl. Opp. at 3.  In Tyson's view, something is rotten in the Department of

the Treasury.  *See id.; see also* Pl. Not. at 3; Pl. Stmt. at 1–3.  Although Tyson never amended

his Complaint and neglected to seek leave to file his additional pleadings, the Court will

nonetheless consider his new arguments, in consideration of his *pro se* status.

　　　In the instant Motion to Dismiss and for Summary Judgment, Defendants raise a medley

of arguments.  They claim that (1) the Court lacks jurisdiction to review OWCP's determination

that Tyson was overpaid FECA benefits, (2) Plaintiff has no claim against the Treasury

Department, (3) the offset amounts are within statutory bounds, and (4) OWCP afforded Tyson

adequate notice of the debt and opportunity to contest the overpayment determination.  *See*

*generally* Def. Mot.

## APPLICABLE LAW

### I.　　Motion to Dismiss

　　　When considering a motion to dismiss, a court must construe a complaint liberally in the

plaintiff's favor, "treat[ing] the complaint's factual allegations as true," *Sparrow v. United Air*

*Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), and granting the plaintiff "the benefit of all

inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605,

608 (D.C. Cir. 1979).

　　　　A.　　*Subject Matter Jurisdiction*

　　　When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must

demonstrate by a preponderance of the evidence that the court has subject-matter jurisdiction to

hear his claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). As a result, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (cleaned up).

In policing its jurisdictional bounds, the court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court, however, need not rely "on the complaint standing alone," as it may also look to undisputed facts in the record or resolve disputed ones. *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted). By considering documents outside the pleadings on a Rule 12(b)(1) motion, a court does not convert the motion into one for summary judgment, as "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment" when a court considers documents extraneous to the pleadings. *Haase v. Sessions*, 835 F.2d 902, 905 (D.C. Cir. 1987) (emphasis in original).

B.     *Failure to State a Claim*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

For actions brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When ruling on a 12(b)(6) motion, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997) (citation omitted).

## II.    Motion for Summary Judgment

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it might affect the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *accord Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see Mastro v. PEPCO*, 447 F.3d 843, 850 (D.C. Cir. 2006); *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). The court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (citation omitted).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, depositions, declarations, answers to interrogatories, or other competent evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Indeed, it must set forth specific facts showing that there is a genuine issue for trial — that is, a reasonable jury could find in his favor. *See id.*; Fed. R. Civ. P. 56(e); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

## ANALYSIS

### I.     OWCP Overpayment Decision

To the extent that Tyson challenges OWCP's determination that he was overpaid FECA benefits, the Court lacks jurisdiction to hear his claim. *See* Compl. at 4–5. To challenge OWCP's final overpayment decision, Tyson must appeal to ECAB. *See* 20 C.F.R. § 10.440(b) ("The only review of a final decision concerning an overpayment is to the Employees'

Compensation Appeals Board.").  If he remains dissatisfied with ECAB's decision, he can only petition for reconsideration.  *See* 20 C.F.R. § 501.6 ("The decisions and orders of the Board are final as to the subject matter appealed, and such decisions and orders are not subject to review, except by the Board."); *id.* § 501.7 (specifying procedure for petitions for reconsideration). Defendants are correct that federal courts are divested of authority to review OWCP's benefits determinations.  *See* Def. Mem. at 15–16.

Congress has used "unambiguous and comprehensive" language in FECA to indicate that it intended "to bar judicial review altogether."  *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 779–80 & n.13 (1985); *see* 5 U.S.C. § 8128(b).  Indeed, Section 8128(b) reads:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is —
>
> (1)    final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2)    not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).  Therefore, any challenge to OWCP's overpayment decision must be made through the exclusive administrative review system prescribed by FECA.  Because the Court lacks jurisdiction over that claim, the Court must dismiss it as to all Defendants.

## II.    Claims Against the Treasury Department and Timothy Gribben

In the instant case, Tyson challenges OWCP's determination that he was overpaid FECA benefits; and he contests the deduction of funds from his other federal benefits payments to satisfy his debt to OWCP.  *See generally* Compl.  Thus, it is OWCP that is the creditor agency, and the Treasury Department is merely administering the offsets.  *See Johnson v. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008).  When disputing a debt with a federal agency, a plaintiff may proceed only against the creditor agency, and not against the Treasury

Department.  The Treasury Department and its officials are not proper parties to such suits

because they "*must* offset federal payments otherwise owed to the non-tax debtor to help satisfy

the outstanding debt."  *Lepelletier v. United States Dep't of Educ.*, No. 09-1119, 2009 WL

4840153, at *1 (D.D.C. Dec. 14, 2009) (citing *Johnson*, 300 F. App'x at 862–63).  Moreover, the

creditor agency is the proper party in such suits because "it is the creditor agency, not the

disbursing agency, that is required to ensure that the debtor receives due process under the law."

*Johnson*, 300 F. App'x at 862–63 (citing 31 U.S.C. § 3716(a)); *accord Lepelletier*, 2009 WL

4840153, at *1.  Consequently, the Department of Labor (of which OWCP is a part) is the proper

defendant in this case.  The Treasury Department and Commissioner Gribben are not proper

parties, and all claims against those Defendants are dismissed for failure to state a claim.

## III.    Claims that the Offset Amounts Exceeded Statutory Limits

Tyson contends that his benefits payments are entirely protected from administrative

offset.  *See* Compl. at 5.  He alternatively argues that even if his payments were subject to offset,

the offsets taken in his case have exceeded statutory limits.  *Id.* at 4–5.  Defendants counter that

the government is entitled to offset his benefits and retirement payments, and that the offset

amounts complied with statutory and regulatory limits.  *See* Def. Mem. at 22–23.

Under the Debt Collection Improvement Act of 1996, federal agencies are authorized to

collect debts owed to them by attaching specified federal benefits, through the process of

"offsetting."  31 U.S.C. § 3720B *et seq.*; *id.* § 3701(a)(1) (defining administrative offset as

"withholding funds payable by the United States . . . to, or held by the United States for, a person

to satisfy a claim").  "Any Federal agency that is owed by a person a past due, legally

enforceable nontax debt that is over 120 days delinquent . . . shall notify the Secretary of the

Treasury of all such nontax debts for purposes of administrative offset under this subsection."

*Id.* § 3716(c)(6)(A).  Unless expressly exempted, all federal payments are eligible for administrative offset.  *See* 31 U.S.C. § 3716; 31 C.F.R. § 285.5(e)(1).

Tyson's disability benefits from the Social Security Administration ("SSA") and retirement payments from OPM do not fall under the enumerated exemptions of payments that cannot be offset.  *See* 31 C.F.R. § 285.5(e)(2); *see also Lockhart v. United States*, 546 U.S. 142, 146 (2005) ("The Debt Collection Improvement Act . . . add[ed] offset authority against Social Security benefits . . . .").  Tyson's benefits are therefore eligible for offset, and Tyson's first argument fails.[5]

Tyson also argues that the specific amounts offset in his case exceeded statutory limits.  *See* Compl. at 4–5.  He is correct that offsets are subject to limits.  For SSA benefits, "[a]n amount of $9,000 . . . within a 12–month period shall be exempt from offset . . . ."  31 U.S.C. § 3716(c)(3)(A)(ii).  Further, under Treasury regulations, the amount of the offset must be the lesser of: (1) the total amount of the debt; (2) 15 percent of the monthly benefit payment; or (3) the amount by which the monthly benefit payment exceeds $750.  *See* 31 C.F.R. § 285.4(e)(1).  The record, however, reflects that each offset from Tyson's SSA benefit payments complied with these regulations:  Fifteen percent of the total payment amount was always the least of the three offset options, and no offset was ever more than 15 percent of the total sum.[6]  *See* Plant Decl., ¶ 10 (citing Plant Exs. B, F, at ECF pp. 5–6, 18).

Plaintiff's retirement annuity payments from OPM are also subject to offset limits.  The Treasury Department's regulations exempt 75 percent of each retirement annuity payment from

---

[5]     In support of his claim, Tyson relies on ERISA.  *See* Compl. at 5.  ERISA, however, applies only to the private sector; Tyson's federal disability benefits are wholly exempt because they arise from a "governmental plan."  *See* 29 U.S.C. § 1003(b)(1); *id.* § 1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by the Government of the United States").

[6]     The offset amounts, less the $12.50 or $14.83 administrative fee charged on each occasion, never exceeded 15 percent.

administrative offset.  *See* 31 C.F.R. § 285.5(f)(2)(i)(C).  As with his SSA benefits, the record

shows that Tyson's OPM annuity payments were never offset by more than 25 percent of the

total amount.[7]  *See* Plant Decl., ¶ 10 (citing Plant Exs. B, F, at ECF pp. 5–6, 18).

Tyson, however, argues that 5 U.S.C. § 5514(a)(1) applies to his retirement payments and

therefore limits offsets from his annuities to 15 percent, not 25 percent.  The 15 percent cap in

Section 5514 applies to "disposable pay," which includes "retired pay."  5 U.S.C. § 5514(a)(1).

In this statutory scheme, "retired pay" has a specific meaning and is "generally understood to

mean benefits received by members or former members of the uniformed services."  *In re*

*Veterans Admin.*, 64 Comp. Gen. 907, 909 (1985) (determining that 31 U.S.C. § 3716, not 5

U.S.C. § 5514, exclusively governs offsets against civilian employees' retirement fund

payments); 5 U.S.C. § 8311(3) (defining "retired pay" as retirement payments to members of

"uniformed service" and their beneficiaries).  The Court, therefore, concludes that 5 U.S.C.

§ 5514 does not govern Tyson's retirement payments from OPM, and that the applicable

statutory cap is 25 percent, which the government never exceeded.

Tyson's offsets were accompanied by administrative charges and per-offset fees, which

Tyson believes are unjustified.  *See* Pl. Opp. at 3 ("When did the Government start[] charging . . .

collection fees?"); Valdivieso Ex. I, at ECF p. 82 (noting that administrative charges, which "are

computed as a percentage of the debt" and "reflect our collection cost," are added to principal

amount); Plant Exs. B, F, at ECF pp. 5–6, 18 (reflecting per-offset fees of $12.50 and $14.83).

Under Treasury regulations, however, the

> Fiscal Service may charge a fee sufficient to cover the full cost of
> implementing the centralized offset program, including the amount of
> any fees charged by other disbursing officials conducting an offset under
> this section.  Fiscal Service may deduct the fees from amounts collected

---

[7]     Similarly, the offset amounts, less the $12.50 or $14.83 administrative fee charged on each occasion, did
not exceed 25 percent.

> by offset or may bill the creditor agencies.  Fiscal Service will charge
> fees only for actual offsets collected.

31 CFR § 285.5(j).  The Fiscal Service is thus legally authorized to charge fees and deduct those

fees from Tyson's payments, which naturally increases the total amount he owes.  *See id.*  The

Court therefore concludes that the administrative fees levied on Tyson's debt were lawfully

assessed.  Having determined that Tyson's arguments are neither supported by the law nor the

facts in the record, the Court grants summary judgment in favor of Defendants on this claim.

## IV.     Due Process & Statutory Requirements

Tyson contends that his right to due process of law was violated when he did not receive

adequate notice of the government's intention to collect the debt by administrative offset, *see* Pl.

Not. at 2–4; Pl. Opp. at 2, and when he was denied an opportunity to inspect the records and to

negotiate an alternative agreement to repay the debt, *see* Pl. Not. at 2, Pl. Opp. at 2.  To

determine whether a plaintiff has been denied procedural due process, the Court must first assess

whether he has plausibly alleged that he was deprived of a protected interest, and then, if so,

whether he has received the process due.  *See UDC Chairs Chapter v. Bd. of Trustees of Univ. of

D.C.*, 56 F.3d 1469, 1471 (D.C. Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S.

422, 428 (1982)).

Here, it is undisputed that Tyson had a property interest in his benefits payments.  *See*

Def. Mem. at 17 (admitting that "disability benefits under FECA can constitute a property

interest").[8]  The question is whether the reduction of his benefits to offset his debt was "preceded

by notice and opportunity for a hearing appropriate to the nature of the case."  *Cleveland Bd. of*

---

[8]      "Disability benefits under FECA constitute a valid property interest" and "the suspension or termination of
FECA benefits can constitute a deprivation of a property interest."  *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 157
(D.D.C. 2018) (cleaned up); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (stating that SSA benefits
constitute a statutorily-created property interest); *American Postal Worker's Union v. United States Postal Service*,
707 F.2d 548, 553–54 (D.C. Cir. 1983) (holding that federal annuity payments constitute property interest).

*Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950)); *see also UDC Chairs Chapter*, 56 F.3d at 1472 ("The Supreme Court has established a general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.") (cleaned up). Therefore, the Court must determine if Tyson received notice that was "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane*, 339 U.S. at 314.

The record reflects that Defendants complied with the procedures mandated by the relevant statute and regulations, *see generally* 31 U.S.C. § 3716(a); 31 C.F.R. § 285.5(d)(6)(ii); 20 C.F.R. §§ 10.431–33, and that Tyson received ample notice that his debt would be offset, as well as numerous opportunities to contest that determination. A review of the record demonstrates beyond any doubt that the government's actions comported with the requirements of due process.

First, OWCP's preliminary determination letter sent on March 16, 2017, notified Tyson of the nature and amount of the debt owed and warned him of the government's intention to collect the debt from Tyson upon the issuance of a final decision. *See* Valdivieso Ex. F, at ECF pp. 45–48. The letter also explained Tyson's right to contest the agency's overpayment decision by requesting: (1) inspection of the relevant records; (2) a telephone conference with the district office; (3) a final decision based on written evidence, and/or; (4) a pre-recoupment hearing. *See id.* It also explained his appeal rights and noted that if he could not repay the debt in full, the agency was willing to "determine a fair repayment method." *Id.*

The final decision, sent on July 10, 2017, again stated the amount owed and informed Tyson of his obligation to repay the debt. *See* Valdivieso Ex. F, at ECF pp. 51–54. It also

notified Tyson of the government's ability to collect the debt through the Treasury Offset Program. *Id.* at ECF p. 53. In addition, the documentation explained Tyson's appeal rights. *Id.* at ECF p. 54.

Prior to applying the first offset, the government sent Tyson two additional demand/warning letters on September 19, 2017 and October 25, 2017. *See* Valdivieso Ex. I, at ECF pp. 80–83. These letters specifically warned Tyson of the imminent debt offset through the Treasury Offset Program. *Id*. The letters again instructed Tyson that he could: (1) inspect and request copies of the debt records; (2) contact the office for accommodations and modifications; (3) enter into a mutually agreeable written repayment agreement; and (4) request a review of the government's determinations about the amount of debt, its past-due status, and its legal enforceability. *Id*.

Next, before initiating offsets from his OPM annuities, Plaintiff was sent additional 30-day and 60-day demand/warning letters on October 1, 2019, and November 1, 2019. *See* Plant Ex. D, at ECF pp. 12–13. Similarly, before initiating offset of Tyson's SSA benefits, Plaintiff was sent 30-day and 60-day demand/warning letters on December 24, 2019, and January 22, 2020. *See* Plant Ex. C, at ECF pp. 9–10.

Then, after the Treasury Department had temporarily halted offsets during OWCP's review of Tyson's misnamed account, and before it resumed collection after it had resolved the name discrepancy, Tyson was again sent 30-day and 60-day demand/warning letters apprising him in advance of the resumed offset of his SSA benefits, *see* Plant Exs. F, G, at ECF pp. 18, 21–22; and he was then issued separate demand/warning letters before the resumption of the offset of any OPM annuity payments, *see* Plant Exs. F, H, at ECF pp. 18, 24–25.

The myriad notices sent by the government to Tyson made "clear that the agency intend[ed] to collect on the debt" and that Tyson could "first obtain a review of the underlying basis for collection or, alternatively, settle the debt via written agreement." *Blanchett v. DeVos*, 490 F. Supp. 3d 26, 38 (D.D.C. 2020). That alone "satisfies constitutional due process requirements." *Id.* (also collecting cases). Tyson responded to only some of the notices, but any failure "to avail [him]self of this process does not render the notice provided constitutionally defective." *Id.* (citing *English v. District of Columbia*, 717 F.3d 968, 974 (D.C. Cir. 2013); and *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Tyson's claim that he did not receive some of the notices, *see* Pl. Not. at 2, is immaterial. *See Gerrard v. Dep't of Educ.*, 656 F. Supp. 570, 575 (N.D. Cal. 1987) (holding that mailing letter to last known address satisfied notice requirements under similar offset statute, 31 U.S.C. § 3720A); *Setlech v. United States*, 816 F. Supp. 161, 166–67 (E.D.N.Y. 1993) (same). "By sending notice by mail to his last known address, the defendants complied with the constitutional requirements that they provide notice reasonably calculated to apprise [the plaintiff] of the offset, and to provide him an opportunity to present his objections." *Omegbu v. Dep't of Treasury*, 118 Fed. App'x 989, 991 (7th Cir. 2004) (citations omitted). In other words, "[a]ctual notice is not required, so long as reasonable means are used to provide notice." *Shabtai v. Dep't of Educ.*, No. 02-civ-8437-LAP, 2003 WL 21983025, at *8 (E.D.N.Y. Aug. 20, 2003) (citing *Setlech*, 816 F. Supp. at 167) (finding that plaintiff was given adequate notice of Treasury offset as required by 31 U.S.C. § 3716).

In any event, Tyson also exercised his appeal rights. As noted, Tyson appealed, and ECAB affirmed OWCP's final decision. *See* Valdivieso Decl., ¶ 9 (citing Valdivieso Ex. G, at ECF p. 58). Tyson then filed for reconsideration, which ECAB denied. *Id.*, ¶ 10 (citing

Valdivieso Ex. G, at ECF pp. 64–66).  "[W]here a person is unlawfully deprived of property, due process is often satisfied where a meaningful post-deprivation remedy is provided." *Nurriddin*, 327 F. Supp. 3d at 157 (cleaned up) (finding that plaintiff had no colorable due process claim because he challenged OWCP's determination through administrative appeal process).  Indeed, "courts have repeatedly held that, 'even in situations where there were violations of OWCP procedures,' the 'post-deprivation remedies available to FECA claimants are sufficient to assure that claimants receive sufficient due process.'"  *Id.* (quoting *Schwartz v. Dep't of Labor*, 161 F. App'x 357, 359 (5th Cir. 2005); and *Lepre v. Dep't of Labor*, 275 F.3d 59, 71 (D.C. Cir. 2001) (finding that plaintiff's appeal and petition for reconsideration, considered by OWCP and ECAB, were sufficient where preliminary notice was allegedly lost in the mail)).  Thus, regardless of whether Tyson received adequate notice and an opportunity to be heard before the offsets were applied, the post-deprivation remedies that he received, which included an appeal and a motion for reconsideration, were sufficient to vindicate his right to due process of law.[9]  *See* Valdivieso Ex. G, at ECF pp. 58, 64–66.

The record demonstrates that Tyson was provided with notice of the offsets on multiple occasions, and that he was afforded numerous opportunities to challenge the government's actions through the designated administrative appeals process.  He took advantage of those opportunities, exercising his right to appeal OWCP's decision and then moving for reconsideration of an unfavorable result.  Accordingly, Tyson's due process claim lacks merit, and Defendants' Motion for Summary Judgment as to this claim will be granted.

_____

[9]     Tyson's assertions that there have been some delays and miscommunications by Fiscal Service, *see* Pl. Stmt. at 2–7; Valdivieso Decl., ¶ 17, do not change the analysis:  He has nonetheless been provided with multiple opportunities to challenge the government's determinations.  Moreover, Tyson's misidentification as "Howard Johnson," *see* Pl. Not. at 3–4, was fully investigated and resolved; the debt was recalled until the paperwork was formally corrected, and the error had no substantive effect.  *See* Valdivieso Decl,. ¶ 15 (citing Valdivieso Ex. J at 1, at ECF pp. 85–86); Plant Decl., ¶¶ 7(b), 8–9 (citing Plant Exs. A–B, E–F, at ECF pp. 2, 4–7, 15, 17–18).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss and for Summary Judgment as to all Defendants.  A separate Order will issue this day.

_____
Florence Y. Pan
United States District Judge

Date:   December 7, 2021